**Kathleen J. HEWITT, Respondent,**

v.

**APOLLO GROUP, et al., Appellants.**

**No. C4–92–671.**

Court of Appeals of Minnesota.

Sept. 22, 1992.

Review Denied Nov. 17, 1992.

Michael M. Bader, St. Paul, for respondent.

Roderick C. Cosgriff, Janet Stellpflug, Minneapolis, for appellants.

Considered and decided by HUSPENI, P.J., and NORTON and FOLEY,* JJ.

## OPINION

NORTON, Judge.

Appellants, Apollo Group and United States Fidelity & Guaranty Company, challenge the trial court order denying them a workers' compensation subrogation recovery and awarding the entire proceeds of a third-party settlement with a negligent tortfeasor to respondent, Kathleen J. Hewitt.

## FACTS

Respondent is employed with appellant Apollo Group as a recruiter for candidates for the Cardinal Stritch College masters program. Respondent's job requires her to travel to various locations to give seminars to recruit candidates. On October 10, 1989, while in the course and scope of her employment, respondent was severely injured in a multi-vehicle accident. As a result of the accident, appellant United States Fidelity & Guaranty Company (USF & G) paid workers' compensation benefits to respondent.

Respondent initiated a third-party tort action against the other driver involved in the accident. A settlement was reached for the $50,000 policy limit of the tortfeasor's automobile insurance. In addition, respondent received $30,000 under her own auto insurer's underinsured motorist coverage.

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

By agreement of the parties, the portion of the third-party settlement proceeds totaling the amount of workers' compensation benefits paid to that time, which amount represented USF & G's subrogation interest under Minn.Stat. § 176.061, was initially placed in an interest-bearing trust account pending allocation pursuant to agreement between the parties or a district court allocation. Respondent and USF & G continued with negotiations regarding the apportionment of the settlement proceeds through January 16, 1991.

On January 22, 1991, appellants filed a petition for an order determining their subrogation interests with the Workers' Compensation Division of the Department of Labor and Industry. On January 29, a subrogation manager of the Department of Labor and Industry issued a third-party order allocating the proceeds of the entire tort settlement amount in accordance with Minn.Stat. § 176.061, subd. 6 (1988).

Respondent appealed the third-party order to the workers' compensation court of appeals. In its August 13, 1991 decision, the workers' compensation appeals court concluded that the allocation of the third-party proceeds was not properly before the subrogation manager and therefore vacated the third-party order.

On December 18, 1991, at special term of the Ramsey County District Court, respondent sought allocation of the third-party settlement proceeds. The trial court allocated the entire settlement proceeds to respondent and entitled her to future workers' compensation benefits without offset pursuant to section 176.061, subd. 6. The trial court denied appellants' claim for subrogation. This appeal followed.

## ISSUES

I. Is USF & G entitled to a subrogation recovery under Minn.Stat. § 176.061, subd. 6 only if respondent has been fully compensated for her damages nonrecoverable under the workers' compensation statute?

II. Is USF & G entitled to a subrogation recovery and credit against future workers' compensation benefits?

III. Is USF & G entitled to a subrogation recovery against the underinsured motorist benefits received by respondent?

IV. Does the evidence support the trial court's allocation of recoverable and nonrecoverable damages?

## ANALYSIS

### I.

Whether a workers' compensation carrier's subrogation recovery under Minn.Stat. § 176.061, subd. 6 (1988) is barred when an employee is not fully compensated for nonrecoverable damages is a question of law. As such, it is subject to de novo review by this court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 `N.W.2d 579, 582 (Minn. 1977).

When workers' compensation benefits are paid to an employee by a third-party tortfeasor, the employer and its insurer are subrogated to the employee's rights against the third-party tortfeasor. Minn.Stat. § 176.061, subd. 5. When the employee's settlement with the third-party tortfeasor includes amounts both recoverable and nonrecoverable under the workers' compensation statutes, the employee has two options: (1) to elect to have Minn.Stat. § 176.061, subd. 6 be applied to the proceeds of settlement by the Workers' Compensation Division or (2) to have the district court allocate the settlement proceeds between amounts recoverable and nonrecoverable under the workers' compensation statutes and then have the Workers' Compensation Division apply section 176.061, subd. 6 only to that portion of the settlement proceeds allocated to recoverable damages. *See Henning v. Wineman*, 306 N.W.2d 550, 552 (Minn.1981). The choice is the employee's. *Id.* Damages not subject to the workers' compensation subrogation statute, and therefore nonrecoverable by the insurer, include amounts for loss of consortium, emotional distress, pain, suffering, and loss of earning capacity. *See Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 903 (Minn.1984). In this case, respondent chose to have the district court

allocate the third-party settlement proceeds between amounts recoverable and nonrecoverable under the workers' compensation statutes.

Appellants argue that USF & G's subrogation rights are statutory and contractual in nature and are not a creation of equity. Therefore, the subrogation rights are not dependent on respondent's full recovery of nonrecoverable damages as a precondition. Appellants rely on *Paine v. Water Works Supply Co.*, 269 N.W.2d 725 (Minn.1978), where the widow of an employee killed in an automobile accident instituted two proceedings: (1) a claim for dependency benefits under the workers' compensation statute and (2) a dram shop action for loss of property and means of support against the vendor who sold the liquor to the driver of the other automobile. *Id.* at 727–28. She received workers' compensation dependency benefits to compensate her for loss of her means of support. Loss of means of support was also the element of damages compensated to the widow under the dram shop act. *Id.* at 731. The court concluded that because the widow settled claims against the third party which were cognizable under the workers' compensation statute, the employer and compensation insurer were subrogated to her rights in the settlement. *Id.*

The *Paine* court stated that it could not conclude, upon the record, whether the insurance settlement, together with compensation payments not subject to a credit, would fully compensate the widow for her loss of support. However, the court concluded that, to the extent of compensation liability, the employer was subrogated to all of the widow's claims against the third party which were cognizable under workers' compensation without regard to whether the widow's recovery would fully compensate her losses. *Id.*

In contrast, in *Cooper v. Younkin*, 339 N.W.2d 552 (Minn.1983), the employee sustained a compensable injury in a collision between his employer's truck and an uninsured motor vehicle. *Id.* at 553. The employee recovered a $40,000 settlement for unspecified damages from his employer's uninsured motorist coverage which was provided by the same insurance company which provided its workers' compensation insurance. *Id.* The court stated that there was nothing in the record to justify the assumption that, except for otherwise uncompensated wage loss, the proceeds of the insurance settlement represent a double recovery. The court concluded that some of the settlement proceeds may represent to some extent a double recovery, but that it seemed unlikely that the settlement did not include some payment for those elements of damages, such as pain and suffering, which may not be fully compensated under the workers' compensation statute. The court then affirmatively stated the rule that:

> [i]t is well established that an insured is entitled to full compensation before an insurer is entitled to exercise a right of subrogation.

*Id.* at 554 (citing *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn. 1983). The *Westendorf* court explained that:

> [g]iven its origins in equity and its restitutionary purpose of preventing unjust enrichment, the general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery.

*Westendorf by Westendorf*, 330 N.W.2d at 703.

This case is distinguishable from *Paine* and is controlled by *Cooper*. Respondent's third-party settlement includes payment for those elements of damages, such as pain and suffering, which are not cognizable under the workers' compensation statute. There is nothing in the record justifying an assumption that respondent has received a double recovery. USF & G is not entitled to a subrogation recovery under Minn.Stat. § 176.061, subd. 6 because respondent has not recovered full compensation for her actual loss.

## II.

Appellants argue that because their subrogation right is not barred by the full recovery rule, USF & G is entitled to a

subrogation recovery and a credit against future compensation benefits. We do not reach this issue because we hold that the full recovery rule bars appellants' subrogation right.

## III.

■ Appellants argue that respondent's $30,000 recovery in underinsured motorist benefits should be included in the computation of USF & G's subrogation recovery as compensation received by respondent from a third party. Whether underinsured motorist benefits should be used in the computation of a subrogation recovery is a question of law subject to *de novo* review by this court. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

The supreme court has concluded that Minn.Stat. § 176.061, subds. 5 and 6, do not include contract liability and contractual payments to an injured party based on uninsured motorist coverage. *Janzen v. Land O'Lakes, Inc.,* 278 N.W.2d 67 (Minn. 1979). The court cited with approval other jurisdictions which have interpreted the workers' compensation laws as allowing:

> the employer to be subrogated only to the rights of the employee against third-party tortfeasors and have reasoned that the employee's right to receive compensation from an uninsured motorist liability carrier was contractual; the carrier was not deemed to step into the shoes of the tortfeasor.

*Id.* (footnote omitted); *see Cooper,* 339 N.W.2d at 554 (statutory subrogation provision does not entitle workers' compensation carrier to subrogation against proceeds received by employee in settlement of claim pursuant to uninsured motorist coverage).

The $30,000 recovery in underinsured motorist benefits obtained by respondent should not be included in the computation of USF & G's subrogation recovery.

## IV.

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. Minn. R.Civ.P. 52.01. Where the trial court's factual findings are reasonably supported by the evidence, they are not clearly erroneous and must be affirmed on appeal. *Mechura v. McQuillan,* 419 N.W.2d 855, 858 (Minn. App.1988).

Appellants argue that the trial court's allocation of damages for uncompensated wage loss, pain and suffering, and future temporary total disability benefits was arbitrary and unsupported by the evidence.

### Uncompensated Wage Loss

Appellants argue that respondent's $13,000 amount of uncompensated wage loss is speculative and does not coincide with the facts. The trial court record includes conflicting affidavits from the parties regarding respondent's wage loss. The record includes copies of respondent's paycheck stubs for the 26–week period prior to her injury.

The trial court was able to weigh the credibility of the affidavits and review respondent's paycheck stubs. When considering the evidence most favorably to the trial court decision, the trial court was not clearly erroneous in setting respondent's uncompensated wage loss at $13,000. *See Trondson v. Janikula,* 458 N.W.2d 679, 682 (Minn.1990) (evidence is viewed most favorably to trial court's findings).

### Pain and Suffering

Appellants also argue that the trial court arbitrarily set the amount for respondent's pain and suffering. The trial court awarded respondent $20,000 for pain and suffering to the time of the hearing and $40,000 for future pain and suffering.

■ In determining whether this verdict is excessive, a comparison with previous verdicts is not justified because of variations in facts and changes in the economy. *Moteberg v. Johnson,* 297 Minn. 28, 34, 210 N.W.2d 27, 31 (1973); *Fifer v. Nelson,* 295 Minn. 313, 318, 204 N.W.2d 422, 425 (1973) ("facts of each case must serve to measure damages"). An award of damages is excessive only when it so greatly exceeds what is adequate as to be accountable on

no other basis than passion and prejudice. *Dallum v. Farmers Union Cent. Exch., Inc.*, 462 N.W.2d 608, 614 (Minn.App.1990), *pet. for rev. denied* (Minn. Jan. 14, 1991). Respondent must prove the reasonable certainty of future damages by a fair preponderance of the evidence. *Pietrzak v. Eggen*, 295 N.W.2d 504, 507 (Minn.1980).

Respondent suffered extensive injuries which continue to this date. She has a permanent scar on her left knee which is minimally subject to correction by cosmetic surgery. She also has persistent swelling in her left leg which can be controlled by use of a compression stocking. Respondent's doctor expects that she is going to be able to continue working in sales, but that due to knee pain, there is a fair chance she may require further surgery.

The record shows past, present and future pain and suffering resulting from respondent's injuries. The trial court was not clearly erroneous in setting the amount for pain and suffering.

### Future Temporary Total Disability Benefits

Finally, appellants argue that the trial court erred in setting the future damage amount of temporary total disability benefits recoverable under workers' compensation at $2725.80. Appellants are correct that the trial court's calculation of total benefits of 16 weeks at $413 a week does not equal that amount, but rather $6608. However, the full recovery rule controls and USF & G receives no part of the allocation of the settlement funds because respondent has not recovered fully for her damages. Any error in calculation of the temporary total benefits is harmless. *See* Minn.R.Civ.P. 61 (harmless error).

### DECISION

The full recovery rule bars appellants' subrogation recovery under Minn.Stat. § 176.061, subd. 6.

Affirmed.

HUSPENI, Judge (concurring specially).

I agree with my colleagues that the full recovery rule bars the exercise of appellant's subrogation rights under the facts of this case. My analysis of the applicable law, however, differs somewhat from that of the majority.

Appellant here relies heavily on *Paine v. Water Works Supply Co.*, 269 N.W.2d 725 (Minn.1978) to argue its entitlement to subrogation against respondent's recovery from the third party tortfeasor. Subrogation was permitted in *Paine*, I submit, not because the equitable doctrine of full recovery was inapplicable there, but because the same damages existed in both the workers' compensation and dram shop actions:

[Widow] is to receive worker's compensation dependency benefits measured by a percentage of her husband's daily wage * * * in order to compensate her for loss of her means of support. Loss of means of support is also precisely the element of damages compensated to a widow under the Dram Shop Act.

*Id.* at 731.

While *Cooper v. Younkin*, 339 N.W.2d 552 (Minn.1983) involves a workers' compensation subrogation claim and contains a discussion of the equitable doctrine of full recovery, I am not certain that *Cooper* is controlling on that issue. The holding of *Cooper* was, in essence, that a workers' compensation carrier was not entitled to subrogation against proceeds received by an employee in the settlement of an uninsured motorist's claim. That principle was stated earlier in *Paine*, and appellant does not challenge it in this case. While there is instructive language in *Cooper* recognizing that an insured is entitled to full compensation before an insurer may exercise a right of subrogation, it seems to me that language may be only dicta.

The language in *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983), recognizing the equitable principle of full recovery, however, is not dicta. While *Westendorf* involved a Health Maintenance Organization rather than a workers' compensation carrier, I am persuaded that the policy considerations of *Westen-*

*dorf* are qualitatively indistinguishable from those present here. Certainly the same cost-containment arguments which might support subrogation in this case were raised and rejected by the supreme court in *Westendorf.*

I conclude that if, in workers' compensation matters, the right to full recovery is to bow to the right of subrogation, the legislature, not the courts, should declare that to be the public policy of the state.