James Allen **KLINISKI,** Respondent,

and

**Aetna Casualty & Surety Company,**
Petitioner, **Appellant,**

v.

**SOUTHDALE MANOR, INC.,**
et al., **Defendants.**

No. C6–92–2552.

Supreme Court of Minnesota.

June 17, 1994.

Janet Stellpflug, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for appellant.

Richard G. Hunegs, Hunegs, Stone, Koenig & Doland, P.A., for respondent.

David M. Bolt, Minneapolis, for defendants Southdale Manor, Inc. and Brian John Parker.

Kenneth Corey–Edstrom, Brooklyn Center, for defendant Jankowski.

## OPINION

WAHL, Justice.

Intervenor Aetna Casualty & Surety Company (Aetna) appeals a decision of the court of appeals affirming the trial court's decision to allocate the entire proceeds from a third party settlement as nonrecoverable damages and to award those proceeds to respondent plaintiff James Allen Kliniski free and clear of Aetna's subrogation interest. In *Henning v. Wineman,* 306 N.W.2d 550 (Minn.1981), we held that the trial court has the authority to allocate the proceeds of a settlement between amounts recoverable and not recoverable under the Workers' Compensation Act.[1] The question in this case is whether the trial court may use this authority to allocate all of the proceeds of a settlement that covered all claims to the plaintiff employee as nonrecoverable damages. We answer that question in the negative and reverse the decision of the lower courts.

On June 15, 1990, Kliniski, a nineteen year-old employee of Kerrick Sod Company, was laying sod along a culvert next to Interstate 35 when he was struck by a car and rendered paraplegic by the injuries he sustained. The accident occurred when defendant Brian John Parker, who was driving south on the interstate in a rental vehicle owned by Southdale Manor, Inc. (d/b/a Ugly Duckling Rent–A–Car), lost control of the

---

1. Only the proceeds allocated to recoverable damages are subject to an insurer's subrogation interest. *Id.* at 552.

vehicle, and hit Kliniski. Aetna, the employer's workers' compensation liability carrier, accepted liability and began to pay Kliniski benefits.

Kliniski subsequently brought a third party tort action against Parker, Southdale Manor, Inc., and Southdale's owners, Leonard Jankowski and Jo Anne Jankowski. Aetna intervened in the lawsuit, asserting a subrogation claim for workers' compensation benefits paid and payable to Kliniski as a result of the accident. The parties settled the case for $1 million, the policy limits of the rental vehicle. According to Aetna, the settlement agreement provided for a general release from all claims, including the subrogation claim. Although the record does not contain a copy of the agreement, Kliniski does not deny that the settlement covered all claims. Kliniski petitioned the trial court for allocation of the proceeds between recoverable and nonrecoverable damages pursuant to *Henning v. Wineman* and asked that all of the proceeds be allocated to him as nonrecoverable damages.

At the allocation hearing, Kliniski and his parents testified about the effect the accident has had on Kliniski's life. Kliniski also presented a copy of a jury verdict in which a jury awarded a similarly-injured plaintiff $2.5 million for past and future pain, disability, disfigurement, embarrassment, and emotional distress. Aetna presented evidence, through its witness Larry Peterson, that it would pay Kliniski between $2.5 and $3 million over the next 52 years. Mr. Peterson placed the present value of these benefits at approximately $400,000. Although Aetna will remain primarily liable for Kliniski's benefits and will be responsible for making the payments, it will be reimbursed, on a yearly basis, for any payments over a $400,000 deductible pursuant to its agreement with the Workers' Compensation Reinsurance Association.

The trial court found the present value of Kliniski's damages to be in excess of $2 million. Although the court made no finding

regarding Aetna's future damages, it found that as of the date of the allocation hearing, Aetna had paid Kliniski $311,853.50 in workers' compensation benefits. The trial court, on the basis of its own "assessment and balancing of all the equities," especially Kliniski's past and future pain and suffering and the other items of noneconomic loss, allocated the full $1 million settlement to Kliniski as nonrecoverable damages.

The court of appeals, in a brief, unpublished opinion, affirmed on the ground that pursuant to *Henning,* the trial court had the authority to allocate the proceeds and that under the facts, the allocation was supported by the evidence and was not unreasonable. We granted Aetna's petition for review.

This case takes us beyond *Henning* and asks whether, when an employee and employer/insurer and a third party tortfeasor agree to a settlement of all covered claims, the trial court has the authority to allocate all of the settlement proceeds to the employee as nonrecoverable damages. This is a question of law which this court reviews de novo. *See, e.g., A.J. Chromy Constr. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

The Workers' Compensation Act (the Act) provides that when an employee elects to receive workers' compensation benefits for an injury caused by a third party's negligence, the employer/insurer is subrogated to the employee's rights against the tortfeasor for the total amount of workers' compensation liability. Minn.Stat. § 176.061, subd. 5 (1992). Under this statutory scheme, any tort recovery an employee receives in judgment or in settlement is to be divided between the employee and the employer/insurer according to the formula set out in section 176.061, subdivision 6.[2]

The statutory formula does not apply, however, to all settlement proceeds. In *Naig v. Bloomington Sanitation,* 258 N.W.2d 891, 894 (Minn.1977), we said that an employee's settlement proceeds from a third party tortfeasor are not subject to the statutory

---

**2.** Under subdivision 6, the employee's tort recovery is divided as follows: first, collection expenses and attorney fees (about ⅓ of the recovery); then ⅓ outright to the employee; next the employer's subrogation claim less a pro rata share for attorney fees; and finally, any balance remaining to the employee subject to a credit to the employer for any future benefits payable.

allocation "[s]o long as the employee demonstrates that the settlement concerns only damages not recoverable under worker's [sic] compensation, or allocates the settlement into recoverable and nonrecoverable claims * * *." Thus, when an employee settles for nonrecoverable damages only, the employer/insurer can pursue its own claim against the third party tortfeasor for damages compensable under the Act. In contrast, when, as here, the settlement agreement includes claims for recoverable and nonrecoverable damages, the employer/insurer is foreclosed from pursuing the tortfeasor and has instead a subrogation interest in the settlement proceeds.

This court held, in *Henning*, that when the employee and the third party tortfeasor have settled both recoverable and nonrecoverable claims, the employee may determine the extent of the employer/insurer's subrogation interest in one of two ways. 306 N.W.2d at 552. Under the first option, the trial court makes no allocation between amounts recoverable and nonrecoverable but simply applies section 176.061, subdivision 6 to all of the settlement proceeds. The employee is compensated for nonrecoverable damages by the statutory right to one-third of the recovery after collection costs. Under the second option, the trial court makes an allocation between amounts recoverable and nonrecoverable under workers' compensation and applies the subdivision 6 formula only to the recoverable damages. An employee who chooses the second option forfeits the statutory right to one-third of the recovery. *Id.* at 552–53.

In *Henning*, the plaintiff/injured employee and the third party tortfeasor settled the lawsuit for $60,000, with $10,000 going to the plaintiff's wife for loss of consortium and $50,000 going to the plaintiff for his injuries. *Id.* at 551. The insurer/intervenor agreed that the total settlement amount was reasonable, as was the allocation between the wife's claim and the plaintiff's claim. After the agreement was signed, the plaintiff, like Kliniski, petitioned the trial court for an allocation hearing to determine the amount of proceeds attributable to nonrecoverable claims. Over the intervenor's objection, the trial court allocated $25,000 to recoverable dam-

ages and $25,000 to nonrecoverable damages. Noting that *Naig* permitted such an allocation, this court affirmed. *Id.* at 551–52.

Although in *Henning* we recognized the trial court's authority to allocate settlement proceeds between amounts recoverable and not recoverable under workers' compensation and thus to increase or decrease the statutory one-third of the proceeds which the employee would receive after collection costs, we did not specify what percent of the settlement each party should receive or give the trial judge authority to allocate the entire amount to one party. In *Krause v. Merickel*, 344 N.W.2d 398 (Minn.1984), we stated that we would affirm settlement allocations "if they appear reasonable in the light of the total award to the plaintiffs * * * [and if they are] not patently arbitrary." *Id.* at 403. Here, where the settlement agreement fully releases the claims of both the injured employee and the subrogated workers' compensation insurer, the settlement necessarily includes claims for damages recoverable under the Workers' Compensation Act. Under these circumstances it is unreasonable and patently arbitrary for the trial court to exclude entirely the insurer's claim for recoverable damages even though the employee is not fully compensated for nonrecoverable damages.

While in certain cases a pro rata allocation might be the fairest procedure, we decline to create another distribution formula, finding it preferable to leave to the discretion of the trial court whether the circumstances in a particular case are such that one party should receive the greater share of the recovery. We reverse and remand to the trial court for reallocation.

Reversed and remanded.