**S.B. FOOT TANNING COMPANY, et al., Respondents,**

v.

**Leo PIOTROWSKI, et al., Appellants.**

No. C4–96–758.

Court of Appeals of Minnesota.

Oct. 1, 1996.

Review Denied Dec. 17, 1996.

Jo Ann Strauss, James L. Haigh, Cousineau, McGuire, & Anderson, Chartered, Minneapolis, for Respondents.

Victor A. Kreuziger, Edina, for Appellants.

Considered and decided by HUSPENI, P.J., and RANDALL and AMUNDSON, JJ.

## OPINION

RANDALL, Judge.

The trial court denied appellants' motion for a new trial finding that respondents had no duty to cooperate with appellants in preparing or presenting their claim against a third-party tortfeasor and that respondents had not waived their right to subrogation. The trial court also determined appellants' requested attorney fees to be unreasonable. We affirm in part, reverse in part, and remand to consider more appropriate attorney fees for appellant.

## FACTS

In March 1989, while employed by respondent S.B. Foot Tanning Company (S.B. Foot Company), appellant Leo Piotrowski was injured using a lift table manufactured by Southworth Products Corporation (Southworth). As a result, S.B. Foot Company, through its insurer, respondent St. Paul Fire and Marine Insurance Company (St. Paul Fire), paid to and on behalf of Piotrowski $118,392.51 in workers' compensation benefits. In July 1990, the parties entered into a stipulated settlement of Piotrowski's workers' compensation claims. The settlement was approved by a workers' compensation judge and provided that, except for future medicals, it was to be a full, final, and complete satisfaction of all claims by Piotrowski. In addition, the stipulation provided that both S.B. Foot Company and St. Paul Fire "retain any rights of subrogation which they may have under the law and do not waive their rights to subrogation."

In May 1990, appellants retained Victor Kreuziger to represent them in a lawsuit against Southworth. The employment agreement signed by appellants provided, inter alia, that if the suit were successful, Kreuziger would receive a contingency fee of one-third the amount of any recovery, the costs of trial or settlement were to be deducted from the clients' share, and if appellants discharged Kreuziger prior to the conclusion of the case, he would receive $120 per hour for the time spent on the case. The agreement also provided that if the client decided to appeal any decision of the court, appellants would pay the out-of-pocket expenses and that "the fee for such appeal will be agreed upon by the attorney and the client prior to appeal."

Although appellants' action was initially brought in state court, Southworth removed the matter to federal district court. In October 1992, a jury returned a verdict in favor of appellants and against Southworth in the amount of $469,218.98. The jury found Leo Piotrowski to be 10 percent at fault, S.B. Foot Company 68 percent at fault, and Southworth to be 22 percent at fault. Applying Minnesota's comparative fault statute, the federal district court entered judgment in the amount of $422,297, plus interest, for Leo Piotrowski and $31,500 for his wife, appellant Katherine Piotrowski.

Southworth appealed the verdict and the Eighth Circuit Court of Appeals affirmed the jury's verdict. Southworth paid the judgment amount into federal district court, and the court released the proceeds to appellants' attorney in December 1994. S.B. Foot Company then filed a state court action in Hennepin County District Court, asserting its subrogation right to recover benefits paid or

payable under the workers' compensation statute.

In January 1995, appellant's attorney disbursed the award except for what he considered to be respondents' subrogation interest, placing this amount in his trust account. S.B. Foot Company then brought a motion requesting the court to order appellants to set aside $79,000 in trust pending an equitable distribution. Appellants' attorney informed the court that he had disbursed the funds and was holding what he considered to be respondents' subrogation interest in his trust account. The trial court ordered appellants' attorney to continue to retain that amount in his trust account.

The following figures were submitted to the Department of Labor and Industry by appellants' attorney:

1. The amount of recovery: $422,297.00
2. The cost of collection, including attorney fees and out-of-pocket expenses: $232,679.00
3. The amount of workers' compensation benefits paid: $118,392.51

On January 21, 1996, appellants filed a motion for summary judgment, arguing that respondents had abandoned their subrogation interest in preference to protecting against a possible contribution claim by Southworth. Appellants' motion was based on a letter written by respondents' attorney dated July 7, 1994, that states in part:

[Southworth's attorney] had indicated to me that if Mr. Piotrowski collects anything on the judgment against Southworth, a contribution claim will be brought against S.B. Foot. Under the circumstances, we are not in a position to assist you in attempting to collect that judgment.

During the pre-trial conference, appellants waived a jury trial and agreed that all remaining issues were to be decided by the court. The trial court also ruled that appellants' attorney would not be allowed to testify as to his fees in the action against Southworth, but that he would be allowed to submit an affidavit on the issue.

At trial, respondents called Mr. James Dunn as an expert witness. Dunn testified to the reasonableness of the collection costs, the employment agreement between appellants and their attorney relative to other such agreements in the legal community, and to the calculations made pursuant to the workers' compensation statute. Over respondents' objection, the trial court allowed appellants' attorney to submit an affidavit regarding his fees in the action against Southworth.

The trial court denied appellants' summary judgment motion and found appellants' costs of collection, including attorney fees, to be unreasonable. The trial court denied appellants' post-trial motions for amended findings or a new trial. The trial court did, however, issue amended findings of fact, conclusions of law, and an order. This appeal follows.

## ISSUES

1. Does an employer/insurer have a duty to cooperate with an employee in the employee's efforts to prepare and present a claim against a third-party tortfeasor?

2. Did respondents waive or abandon their subrogation interests?

3. Did the trial court err in calculating the employer's future credit pursuant Minn.Stat. § 176.061, subd. 6(d)?

4. Did the trial court properly conclude that appellants' requested attorney fees were unreasonable?

5. Did the trial court err in awarding prejudgment interest?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). On appeal, this court must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

A trial court's findings of fact will not be set aside unless clearly erroneous and due regard shall be given to the trial court's

opportunity to judge the credibility of the witnesses. Minn. R. Civ. P. 52.01. Further, this court "will only reverse a trial court's findings of fact if, upon review of the entire evidence, it is left with the definite and firm conviction that a mistake has been made." *In re Guardianship of Dawson,* 502 N.W.2d 65, 68 (Minn.App.1993), *review denied* (Minn. Aug. 16, 1993) (citation omitted).

The decision to grant a new trial lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990). Where the trial court exercises no discretion, but instead, bases its order on an error of law, this court's review is de novo. *Id.*

## I.

Appellants argue that an employer/insurer has a duty to cooperate with an employee in the employee's efforts to prepare and present his claim against a third-party tortfeasor. Appellants maintain that where an employer/insurer has a vested interest in the outcome of the employee's legal action, it has a clear duty to cooperate with the employee whose success ultimately determines the employer/insurer's subrogation recovery. Appellants contend that a breach of this duty results in an employer/insurer surrendering all, or part, of its subrogation interest against the employee. We disagree.

Appellants rely on a line of cases discussing the standard by which an insured satisfies an automobile indemnity policy's cooperation clause in the insurer's efforts to defend the insured on a third-party claim. *See, e.g., Caron v. Farmers Ins. Exch.,* 252 Minn. 247, 256, 90 N.W.2d 86, 92 (1958) (requiring insured to stand "upright at all times as an honest man"); *Annis v. Annis,* 250 Minn. 256, 258, 84 N.W.2d 256, 259 (1957) (insured must report material facts as he remembers and reasonably believes them to be). Appellants maintain this duty to cooperate also applies to the insurer when it is the insured bringing suit against the third-party tortfeasor.

While appellant raises a compelling argument, the cases cited by appellant are distinguishable by the fact that here there is no cooperation clause in place between the parties. These cases simply hold that an insured satisfies the requirements of the cooperation clause by telling the truth as he in good faith or reasonably believes it to be. *Caron,* 252 Minn. at 256, 90 N.W.2d at 92. No legal authority exists establishing a duty on the part of an employer/insurer to cooperate with an employee in presenting a claim against a third party tortfeasor. To the contrary, the Minnesota Supreme Court has recognized that while the workers' compensation statute "creates an incentive for the compensation carrier, in the ordinary case, to assist the employee * * * it does not impose upon the employer any duty to inform the employee of his rights." *Olson v. Horton,* 258 N.W.2d 610, 614 (Minn.1977). The logical extension of this principle is that, absent an agreement to the contrary, an employer/insurer, while it may have an incentive to do so, does not have a legal duty to cooperate with the employee in the employee's efforts to bring suit against a third-party tortfeasor. Accordingly, the trial court did not err as a matter of law in finding that S.B. Foot Company and St. Paul Fire had no duty to cooperate with appellants in preparing and presenting their claim against Southworth.

## II.

Appellants argue that the trial court erred when it concluded the S.B. Foot Company and St. Paul Fire did not abandon or waive their subrogation claim.

Generally, "abandonment 'means the act of intentionally relinquishing a known right absolutely and without reference to any particular person or purpose.'" *Erickson v. Sinykin,* 223 Minn. 232, 239, 26 N.W.2d 172, 176 (1947) (citation omitted). Abandonment must be clearly expressed by the acts and conduct of the parties sufficient to be positive and unequivocal. *See Desnick v. Mast,* 311 Minn. 356, 365, 249 N.W.2d 878, 884 (1976) (mutual abandonment must be clearly expressed and the acts of the parties must be positive and unequivocal).

■ Appellants point to the letter dated July 7, 1994, from S.B. Foot Company's attorney stating that it was unable to assist them in collecting the judgment against Southworth because Southworth would bring a contribution claim against S.B. Foot Company if appellants collected on the judgment. Appellants maintain that respondent abandoned or waived their subrogation interest by failing to assist in collecting the judgment and choosing to protect against a possible *Lambertson* [1] claim from Southworth. However, appellants offer no legal support for this position and from respondents' actions no such conclusion is warranted. Simply stated, there is no authority for the proposition that because an employer/insurer is protecting against a *Lambertson* claim, it has waived or abandoned its right to subrogation.

■ Here, the letter standing alone does not show a clear expression by respondents to unequivocally relinquish their right to subrogation. The letter simply states that under the circumstances S.B. Foot Company was unable to assist appellants in collecting the judgment. It makes no mention that they were abandoning or waiving their right to subrogation under Minn.Stat. § 176.061, subd. 6 (1994). We also note that the stipulated settlement of Leo Piotrowski's workers' compensation claims specifically provides that respondents retained and did not waive their right to any subrogation interest they may have under the law. Respondents have consistently sought to preserve their rights to any subrogation interest. The trial court properly concluded that respondents did not abandon or waive their right to subrogation.

### III.

Appellants next argue that the trial court erred in interpreting the future credit provision of Minn.Stat. § 176.061, subd. 6(d), by not limiting it to a maximum of $40,000, the amount the jury specifically determined to be Leo Piotrowski's future medical costs. After applying the statutory formula, the trial court determined respondents' future credit to be $73,252.

■ The workers' compensation statute allows an employee and his employer/insurer to settle out all claims and obligations regarding such items as the employee's lost wages, past medical expenses, and disability. *See* Minn.Stat. § 176.521 (1994) (settlement of claims). However, contrary to appellants' assertion, the workers' compensation statute does not prohibit the compromise and settlement of future medical expenses, and appellant fails to cite any legal authority to support this proposition.

Appellants claim respondents should not be entitled to the full balance for future credit under Minn.Stat. § 176.061, subd. 6(d), because in light of the parties' settlement, the only future workers' compensation expense for which respondents will be liable is future medical costs. Appellants argue that because the jury determined Leo Piotrowski's future medicals to be $40,000, this is the limit of respondents' future workers' compensation exposure.

Here, in determining respondents' future credit, the trial court applied the statutory formula set forth in Minn.Stat. § 176.061, subd. 6. Under the statutory guidelines, the trial court is to first subtract the reasonable costs of collection, including attorney fees, from the total verdict received by the injured employee. Minn.Stat. § 176.061, subd. 6(a). From this amount, one-third is immediately payable to the employee irrespective of any subrogation interest. Minn.Stat. § 176.061, subd. 6(b) The employer is then reimbursed in an amount equal to all workers' compensation benefits paid less the product of the cost deducted for costs of collection divided by the total proceeds received by the employee multiplied by all benefits paid by the employer to the employee. Minn.Stat. § 176. 061, subd. 6(c). From this, the employer must pay to the employee a proportionate share of the costs of recovery without any future credit. The balance left over is to be paid to the employee with that amount as a credit to any benefits the employer/insurer is obligated to

---

**1.** Under a *Lambertson* claim, a third-party tortfeasor has a limited right to contribution from an at-fault employer up to the amount the employer is obligated to pay the employee in workers' compensation benefits. *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 130, 257 N.W.2d 679, 689 (1977).

pay, but has not paid or is obligated to pay in the future. Minn.Stat. § 176.061, subd. 6(d).

■ As respondents note, appellants fail to cite any relevant legal authority to support their position that an employer's future credit is limited to the future medical expenses as determined by a jury in a third-party action. It is settled that where an employee's injuries are within the workers' compensation statute, the rights and remedies afforded the employee, employer, and others who may have any right of action on account of the employee's injury are governed exclusively by the workers' compensation statute to the exclusion of all other remedies. *Hartman v. Cold Spring Granite Co.*, 247 Minn. 515, 519, 77 N.W.2d 651, 654 (1956). Having applied the statutory guidelines to arrive at respondents' future credit, we cannot say the trial court erred in refusing to reduce the amount of respondents' future credit based on the jury's verdict.

### IV.

Appellants argue that respondents lacked standing to challenge the reasonableness of his attorney fees and that the trial court erred as matter of law in concluding his attorney fees were unreasonable.

■ Appellants' argument regarding standing is without merit. In the context of the reasonableness of attorney fees under Minn.Stat. § 176.061, subd. 6, an employer has the right to be heard on the issue. *Lang v. William Bros. Boiler & Mfg. Co.*, 250 Minn. 521, 533, 85 N.W.2d 412, 420 (1957); *see also Schmidt v. Apple Valley Health Care Ctr.*, 460 N.W.2d 349, 354 (Minn.App. 1990) (standing exists where a party will suffer an injury in fact), *review denied* (Minn. Oct. 25, 1990). Otherwise, an employee and his attorney could effectively deny the employer its share in the proceeds from a third-party action by simply asserting that the attorney fees were agreed to and were reasonable.

■ More importantly, appellant argues the trial court erred in finding his requested attorney fees to be unreasonable under Minn. Stat. § 176.061, subd. 6(a). We agree. A determination of what are reasonable attorney fees under Minn.Stat. § 176.061, subd. 6(a), as a general statement, are within the discretion of the trial court, not the employee's attorney. *Lang*, 250 Minn. at 533, 85 N.W.2d at 421. But the trial court has to recognize and reward the remarkable efforts by Kreuziger in this case on behalf of his clients, the Piotrowskis. Kreuziger's efforts were monumental in preparing the case, going through difficult discovery, fighting off his own workers' compensation carrier who had another agenda, working hard to preserve the win on appeal, and then the daunting task of collecting the judgment from an almost defunct defendant for his clients. The Piotrowskis recognize all that Kreuziger did for them, and not only do they not disapprove of his request for attorney fees over and above a flat one-third, they actively support his present request for what amounts to 54 percent of the amount recovered plus a few more reasonable costs and disbursements.

■ First, the trial court erred in basically looking only at the initial written agreement between appellants and their attorney, Victor Kreuziger. That was the retainer agreement dated May 7, 1990, calling for a contingency fee of one-third of any recovery. The trial court found that there had been no modification to this agreement. Kreuziger submitted to the Minnesota Department of Labor and Industry a request for 54 percent of the jury award for the combined costs of collection for trial and appeal, and then an additional 1.10 percent of the jury award for reasonable costs. The trial court concluded that as a percentage of the total verdict, 55.10 percent was unreasonable.

During trial, James Dunn testified as respondents' expert on the issue of reasonable attorney fees. Dunn testified that based on his 29 years of experience in this area of law (products liability) and based on the custom and practice in the profession, the average fee, including costs, for recovery in such cases is 37 percent. Dunn stated that he had never heard of a fee approaching 55 percent and considered such a fee "absolutely unreasonable," whether agreed to in the beginning, the middle, or after the verdict. He also

concluded the time spent on the case by appellants' attorney was unreasonable. In Dunn's opinion, a one-third contingency fee was reasonable in a case such as appellants'. However, according to Kreuziger's undisputed affidavit, the original retainer agreement was amended by letter once on March 4, 1993, to provide for hourly fees to oppose respondents' appeal to the Eighth Circuit Court of Appeals, and then again on July 18, 1994, to provide for hourly fees in his efforts to collect the judgment, after preserving the win on appeal. After preserving the win on appeal, there was no insurance company ready and willing to extend a check. Kreuziger and the Piotrowskis had to continue to fight to get their money. Kreuziger agreed to waive his fees if appellants were unsuccessful in their efforts. Kreuziger's affidavit detailed the time spent on the case, the responsibilities assumed, the nature and difficulties of the propositions involved, the financial abilities of the clients, and the difficulties involved with the appeal and in the collection.

Also, even the original fee agreement entered into between Kreuziger and the Piotrowskis, which the trial court purported to rely on, provided that Kreuziger would be entitled to more than a straight one-third contingency fee, if his clients, the Piotrowskis, requested him to file an appeal. Although the agreement did not happen to cover what the additional fees would be if the Piotrowskis were successful, and the other side appealed, we take judicial notice that defending an appeal (which you must do or risk losing by default) can be as much work as appealing. In recognition of this fact, the Piotrowskis and Kreuziger twice amended their original employment agreement to provide for additional hourly fees to oppose the appeal and collect the judgment. Kreuziger successfully fought respondents' appeal. The spirit of his fee agreement with the Piotrowskis easily lends itself to the only common-sense interpretation, which is that if the Piotrowskis were willing to pay an additional fee of more than one-third if they wanted to appeal, they are willing to pay something more than the contingent fee if they have to fight the other side's appeal. The Piotrowskis are in complete accord with this.

Most importantly, Kreuziger's lengthy affidavit went unrefuted. In his affidavit, Kreuziger details, among other things, how difficult the appeal was, how he had to chase the third-party tortfeasor in three different states, and how he received no cooperation from S.B. Foot Company because they preferred to have no subrogation claim, rather than expose themselves to a potential *Lambertson* claim from Southworth. Respondents concede that Kreuziger's clients, the Piotrowskis, support his claim for attorney fees. Had the Piotrowskis come into court and opposed his request for attorney fees of 55 percent of the recovery, this may have been a different story. They did not.

■ Here, the record easily supports the conclusion that attorney fees, plus costs and disbursements, in addition to 33–1/3 percent are proper here because Kreuziger succeeded on appeal and then succeeded on a most difficult collection. Accordingly, we reverse the trial court's limitation of 33–1/3 percent and remand to the trial court to reconsider more appropriate attorney fees.

### V.

■ Lastly, appellants argue the trial court erred in awarding prejudgment interest. The trial court's award of prejudgment interest is governed by Minn.Stat. § 549.09 (1994). As such, it is a question of law reviewed de novo by this court. *Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 190 (Minn.1990) (construction of statute is question of law reviewed de novo).

■ Generally, Minnesota law allows a trial court to award prejudgment interest in the case of a liquidated claim or where the amount of damages is ascertainable by computation. *Gand v. Jay Bros., Inc.*, 367 N.W.2d 645, 647 (Minn.App.1985).

Appellants argue that pursuant to Minn. Stat. § 549.09, subd. 1(b)(1), prejudgment interest is not allowable in the present case. Section 549.09 provides, in part:

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest shall not be awarded on the following:

(1) judgments, awards, or benefits in workers' compensation cases, but not including third-party actions;

■ Although the underlying action in this case is appellants' suit against a third-party tortfeasor, respondents' action to collect its subrogation interest was brought pursuant to the workers' compensation statute. *See* Minn.Stat. § 176.061, subd. 3 (where an employee receives benefits from the employer the employer is subrogated to the right of the employee to recover damages against the other party). Thus, Minn.Stat. § 549.09, subd. 1(b)(1), applies to prohibit an award of prejudgment interest in this case. We reverse the trial court's decision awarding prejudgment interest.

## DECISION

Respondents had no duty to cooperate with appellants in their efforts to prepare and bring a claim against Southworth. Respondents did not abandon or waive it rights to subrogation simply because they chose to protect against a potential *Lambertson* claim. We conclude the trial court properly applied Minn.Stat. § 176.061, subd. 6, and did not err when it refused to limit respondents' future credit under Minn.Stat. § 176.061, subd.6(d),

to the amount of future medical costs as determined by the jury.

In light of the difficulties associated with preparing this case, going through trial, successfully defending the appeal, and the difficulty in collecting on the judgement, the record does not support the trial court's determination that appellants' attorney is limited to a straight one-third contingency fee. We remand to the trial court to reconsider more appropriate attorney fees and costs for appellants' attorney.

Because respondents' action to collect its subrogation interest was brought pursuant to the workers' compensation statute, the trial court erred in awarding respondents' prejudgment interest. Accordingly, we reverse on this issue.

***Affirmed in part, reversed in part, and remanded.***