**In the Matter of the Petitions for Approval of Settlement and Distribution of Wrongful Death Proceeds for the Next of Kin of Marcia Wellstone MARKUSON, Mary Alice McEvoy, Thomas Henry Lapic and William Michael McLaughlin, Decedents.**

No. A04–185.

Court of Appeals of Minnesota.

Aug. 24, 2004.

Bruce W. Larson, Wayzata, MN, for appellant Special Compensation Fund.

Michael V. Ciresi, Roberta B. Walburn, Vincent J. Moccio, Philip Sieff, Robins Kaplan Miller & Ciresi L.L.P., Minneapolis, MN, for respondents trustees.

Considered and decided by SCHUMACHER, Presiding Judge, HALBROOKS, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

The Special Compensation Fund (the fund) appeals from a district court order determining the amount of its subrogation claim for workers' compensation paid or to be paid after the deaths of four employees of the Wellstone for Senate Campaign. *See* Minn.Stat. § 176.061, subd. 6 (2002) (setting out statutory formula to determine how settlement proceeds are to be divided between employee's dependents and the fund). The district court determined that the fund was entitled to $200,000 from the wrongful-death settlement proceeds received by respondents, who are trustees for the families of the deceased employees.[1]

Because the district court did not abuse its discretion or clearly err when it reduced the fund's subrogation claim by one-third for the reasonable costs of collection, even though the trustees' actual fees and costs were only 17%, and when it ruled that the fund did not meet its burden of proof to establish that the youngest dependents of two of the deceased employees would go to school beyond the age of 18,[2] we affirm on those issues. Because the district court misapplied the statutory formula when it reduced the amount of the fund's subrogation claim, rather than the amount of the wrongful-death settlement, by 60% to account for nonrecoverable damages, we reverse on that issue and remand to the district court to recalculate the fund's subrogation claim in a manner consistent with this opinion.

## FACTS

On October 25, 2002, a chartered plane crashed outside Eveleth, Minnesota, killing all eight people aboard, including Paul and Sheila Wellstone; two crew members; and four employees of the Wellstone for Senate Campaign: Marcia Wellstone Markuson, Mary McEvoy, Thomas Lapic, and William McLaughlin. Because the campaign failed to carry workers' compensation insurance, the responsibility for providing benefits to the dependents of these four employees was assumed by the fund. *See* Minn.Stat. § 176.183 (2002).

In February 2003, trustees were appointed for the families of each of the six passengers to pursue wrongful-death claims against the charter company. The trustees settled the claims on a *Pierringer*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. This file remains under seal as ordered by the district court. Only two district court orders are public: the "Order and Memorandum Regarding the Claims of the State of Minnesota Special Compensation Fund," filed December 10, 2003, and the "Order Allocating Funds to be Paid to the State of Minnesota Special Compensation Fund," filed December 22, 2003.

2. The last year of schooling is important because a surviving spouse is entitled to receive benefits for 10 years after the youngest child finishes school. Minn.Stat. § 176.111, subds. 7, 8 (2002).

basis with the company and its affiliates. The trustees thereafter filed petitions in district court to approve the settlements and distribute the settlement proceeds. The petitions were approved on October 13, 2003, with money placed in escrow, subject to resolution of the fund's subrogation claim.

The fund and the trustees entered into a stipulation setting out the issues and evidence to be presented at a hearing to determine the amount of the fund's subrogation claim. The parties agreed that as of the date of stipulation, the families had received $161,091 in workers' compensation benefits, the fund had been reimbursed $661,875.87 by the campaign,[3] and the trustees' attorney fees and costs amounted to 17% of the third-party wrongful-death proceeds.

The parties further agreed to submit a number of issues to the district court, only three of which are involved in this appeal: (1) under *Henning v. Wineman*, 306 N.W.2d 550 (Minn.1981), what is the appropriate allocation "of the wrongful death settlements" between recoverable and nonrecoverable damages considering the trustees' claim that "the settlements do not fully compensate" the families for their respective damages; (2) what is the present value of the future workers' compensation benefits to be paid by the fund to the Markuson and McEvoy families; and (3) what is the amount to be deducted for the costs of collection from the portion of the wrongful-death settlements "allocated by the Court as Recoverable damages[?]"

In memoranda submitted to the district court prior to the hearing, the parties each proposed calculations of the fund's subrogation claim. The trustees calculated the claim at $482,726, subject to a further reduction not specifically enumerated by the

trustees based on a consideration of "a fair reduction for the lack of full recovery of damages." The fund calculated that its subrogation claim totaled more than $1.13 million.

On December 10, 2003, the district court issued an order determining that the fund was entitled to receive $200,000 from the settlement proceeds. The court calculated the fund's total exposure at $728,369. The court reached this figure by finding that the present value of future benefits payable totals $1,289,153, a figure based on the assumption that the youngest children of two of the decedents will not continue with school beyond the age of 18 and that also includes $161,091 for past benefits paid. The court reduced this amount by $661,875 and $60,000, for amounts the fund received from the campaign and for future benefits payable to the three children of Markuson's husband, who are not entitled to share in the wrongful-death settlement proceeds. The court further reduced this amount ($728,369) by one-third, or $240,362, for attorney fees, thus decreasing the fund's subrogation claim to $488,007.

As a final issue, the district court considered "whether or not [this amount, $488,007,] should be reduced because the next-of-kin of the decedents in this matter have not received a full recovery." The court continued:

It could easily be said that no amount of money could ever fully compensate the next-of-kin of these decedents for the loss that they have suffered. That being said, substantial settlements were received in these matters. However, there remains the issue under *Henning v. Wineman*, 306 N.W.2d 550 (Minn. 1981) for this Court to allocate the

---

**3.** In early 2004, after the hearing was held and the order was issued in this case, the fund received an additional $28,000 from the campaign.

amount of damages under these wrongful death settlements that are recoverable versus nonrecoverable under the worker's compensation act.

The district court found that "it would be fair and reasonable to attribute approximately 60 percent of the wrongful death settlements for purposes of these proceedings to nonrecoverable damages and approximately 40 percent to recoverable damages." The court concluded that the fund was entitled to recover only 40% of its subrogation claim of $488,007, or approximately $200,000, from the wrongful-death settlement proceeds.

The fund appeals.

### ISSUES

1. Did the district court misapply the statutory formula set out in Minn.Stat. § 176.061, subd. 6 (2002)?

2. Did the district court abuse its discretion by giving the trustees credit for attorney fees and costs equal to one-third, or 33–1/3%, when the trustees' actual fees and costs were only 17%?

3. Did the district court clearly err by finding that the evidence was insufficient to show that the youngest dependents of two of the decedents would not continue with school beyond the age of 18?

### ANALYSIS

#### I.

■ The fund argues that the district court erred by failing to follow the statutory formulas set out in Minn.Stat. § 176.061 (2002) and modified by *Henning v. Wineman*, 306 N.W.2d 550, 552 (Minn.1981). Issues involving the correct application of a statute are questions of law, which we review de novo. *See Drake v. Reile's Transfer & Delivery, Inc.*, 613 N.W.2d 428, 431 (Minn.App.2000).

An employer, in this case the fund, is subrogated to an employee's rights against a third-party tortfeasor if the employee receives workers' compensation benefits. Minn.Stat. § 176.061, subd. 3 (2002). When the employee obtains either a judgment or a settlement from the tortfeasor, the fund may recover its subrogated share in accordance with the statutory formula set out in Minn.Stat. § 176.061, subd. 6. The formula generally gives an employee the right to receive one-third of the amount remaining after deduction of reasonable costs. *Id.*

■ The formula, however, does not require a district court to allocate settlement proceeds between damages that are recoverable and nonrecoverable under the workers' compensation statutes. In *Henning*, 306 N.W.2d at 552, the supreme court gave an employee the option either to apply the statutory formula to the entire settlement amount or to petition the district court to allocate the proceeds between recoverable and nonrecoverable damages and to then apply the statutory formula only to that part of the settlement allocated to recoverable damages. *See Drake*, 613 N.W.2d at 432.

In this case, the trustees opted for a *Henning* allocation. But rather than allocating the settlement proceeds received by the families between recoverable and nonrecoverable damages, the district court first calculated the value of the fund's subrogation claim and then, citing *Henning*, reduced that claim by 60% to reflect consideration of nonrecoverable damages. In so doing, the district court misapplied *Henning* and the statutory formula.

Assuming acceptance of the district court's allocation between nonrecoverable and recoverable damages (60% and 40%, respectively), a proper application of *Henning* would result in recoverable damages (40% of the settlement proceeds, after de-

duction of reasonable costs of collection of one-third) far in excess of any amount claimed by the fund to satisfy its subrogation claim. The purpose of allocating damages under *Henning* is to limit a subrogation claim to that portion of the proceeds allocated to recoverable damages.[4] Here, the fund calculates its subrogation claim at $466,913, given acceptance of the district court's other rulings regarding the reasonable costs of collection (one-third, rather than 17%); the present value of past and future benefits ($1,450,244, which is based on the assumption that the two youngest children will not continue in school beyond the age of 18); and consideration of other payments already received by the fund from the campaign ($661,875 and $28,000) and amounts payable to dependents not considered heirs but entitled to wrongful-death settlement proceeds ($60,000). The district court erred by taking the fund's subrogation claim ($466,913) and reducing it further by 60% for nonrecoverable damages, for a final subrogation claim of $200,000.

■ On appeal, the trustees argue that the district court reduced the fund's subrogation claim by 60% to account for the lack of full recovery by the families.[5] But the trustees' argument is flawed in several respects.

First, the district court's memorandum fails to support the trustees' claim that the court agreed that the families were not fully compensated by the settlement. The district court explicitly stated:

> The final issue raised for the Court's consideration is whether or not the amount sought for recovery by the Special Compensation Fund should be reduced because the next-of-kin of the decedents in this matter have not received a full recovery. It could easily be said that no amount of money could ever fully compensate the next-of-kin of these decedents for the loss that they have suffered. That being said, substantial settlements were received in these matters.

These statements negate any assertion that the court found a lack of full recovery in this case. And, as the fund notes, the record fails to support a finding that the families were undercompensated; at various points in these proceedings, both parties and the district court described the settlements as substantial or exceptional. Thus, the record fails to support the trustees' claim that the families were undercompensated or that the district court

4. A *Henning* allocation appears most useful in situations where the settlement proceeds are clearly insufficient and where an injured employee desires to maximize the amount allocated to nonrecoverable damages, thus shielding that amount from any subrogation interest on the part of the insurer. Those concerns are not as readily apparent in this case, given the substantial amount of the settlements and the district court's allocation of 40/60% between recoverable and nonrecoverable damages.

5. Both parties also raise waiver-type arguments regarding the full-recovery issue. The trustees argue that because the issue of full recovery was presented to the district court, the fund cannot now challenge the manner in which the court applied that doctrine to reduce the fund's subrogation claim. The fund argues that because the trustees failed to file a notice of review, they cannot challenge the district court's apparent finding that they were not undercompensated, nor can they challenge the court's 40/60% allocation between recoverable and nonrecoverable damages. Neither party's argument, however, is entirely accurate. While the issue of full recovery was raised before the district court, the court's eventual decision to reduce the fund's subrogation claim using a *Henning*-type allocation was not contemplated or advocated by either party. We therefore reject both parties' waiver arguments.

found that they failed to receive full recovery.

Second, the full-recovery doctrine may not be viable under current case law, particularly when *Pierringer* releases are involved. As set out in *Hewitt v. Apollo Group,* 490 N.W.2d 898, 901 (Minn.App. 1992), *review denied* (Minn. Nov. 17, 1992), the full-recovery doctrine assumes that a workers' compensation insurer has no subrogation rights until an insured is fully compensated. The viability of this court's decision in *Hewitt,* however, is questionable because it appears contrary to a more recent supreme court case that states:

> Here, where the settlement agreement fully releases the claims of both the injured employee and the subrogated workers' compensation insurer, the settlement necessarily includes claims from damages recoverable under the Worker's Compensation Act. Under the circumstances, it is unreasonable and patently arbitrary for the trial court to exclude entirely the insurer's claim for recoverable damages even though the employee is not fully compensated for nonrecoverable damages.

*Kliniski v. Southdale Manor, Inc.,* 518 N.W.2d 7, 10 (Minn.1994). The trustees assert that the above-quoted language from *Kliniski* is dictum and that *Hewitt* remains good law because it is not specifically overruled or cited in *Kliniski.* Nevertheless, *Kliniski* casts serious doubt on whether the full-recovery doctrine can be used to reduce a subrogated insurer's interest in settlement proceeds, particularly in the manner in which the district court here reduced that interest.

Finally, the trustees essentially acknowledge that the district court here failed to properly apply the statutory formula. The trustees assert that the court acted within its discretion when it refused to "mechanically" apply the formula and

when it decided to reduce the fund's subrogation interest by the percentage allocated to nonrecoverable damages. Even if we agree with the trustees' assertion that the families were not fully compensated and that the fund's subrogation interest should be reduced, it is not clear that lack of full recovery was the basis for the district court's decision to reduce the fund's interest. Rather, as support for its decision, the district court cited *Henning,* not any lack of full recovery by the families.

We therefore reverse the district court's determination that the fund is entitled to $200,000 from the settlement proceeds. The matter is remanded for a calculation under Minn.Stat. § 176.061, subd. 6, consistent with this opinion.

## II.

 The fund argues that the district court abused its discretion by disregarding the actual amount of attorney fees and costs incurred by the trustees, which the parties stipulated was 17% of the settlement, and by allowing a deduction for attorney fees of one-third of the settlement. The determination of the reasonable amount of attorney fees to deduct under the statutory formula is an issue generally left to the discretion of the district court. *S.B. Foot Tanning Co. v. Piotrowski,* 554 N.W.2d 413, 419 (Minn.App.1996), *review denied* (Minn. Dec. 17, 1996).

Minn.Stat. § 176.061, subd. 6(a), provides for the deduction of the "reasonable costs" of collection. As the trustees argue, the legislature could have allowed a deduction for the "actual" costs of collection but did not. *Cf.* Minn.Stat. § 548.36, subd. 4 (2002) (providing for payment of "same percentage of attorney's fees as paid by the plaintiff").

 The trustees presented evidence that attorney fees of one-third of a settle-

ment are standard and reasonable. And Minnesota case law tends to recognize that one-third attorney fees are generally accepted in the legal community as reasonable. *See Tyroll v. Private Label Chems., Inc.,* 505 N.W.2d 54, 60 (Minn.1993). Thus, had the attorneys charged the typical one-third fee, that amount arguably would have been deemed "reasonable."

Here, however, the trustees' attorneys decreased their fees to 17% due to their longstanding personal relationship with the Wellstone family. The trustees argue that the fund had no such relationship and should not be able to benefit from the desire of the trustees' attorneys to maximize the proceeds available to the families. The district court agreed, noting that "[c]ounsel for the trustees had no special relationship with the Special Compensation Fund in this matter and there is no reason to depart from the normal practice" of deducting one-third for the "reasonable" costs of collection. Given the unique facts of this case, we cannot say that the district court abused its discretion by allowing a one-third deduction for reasonable attorney fees and costs, even though respondents' actual costs were only 17%. *Cf. S.B. Foot,* 554 N.W.2d at 413–14 (concluding that district court abused its discretion by limiting attorney fees to one-third, given the extraordinary efforts on the part of the injured employee's attorney).

### III.

The fund argues that the district court clearly erred in finding that the youngest children of McEvoy and Markuson will not attend school past the age of 18. *See* Minn.Stat. § 176.111, subds. 7, 8 (2002) (providing that surviving spouse entitled to receive workers' compensation benefits for 10 years after youngest child finishes school). Issues involving a district court's determination regarding the amount of future workers' compensation benefits to be paid are reviewed under a clearly erroneous standard, which allows us to reverse only if the evidence fails to reasonably support the court's finding. *See Schlichte v. Kielan,* 599 N.W.2d 185, 187–88 (Minn.App.1999), *review denied* (Minn. Nov. 17, 1999).

The parties presented evidence in the form of expert affidavits regarding the present value of future workers' compensation benefits to be paid by the fund.[6] The trustees' expert calculated the present value of future benefits at $1,284,873, based on the assumption that the youngest children would not go to school beyond the age of 18. The fund's expert submitted three calculations, ranging from $1,289,153, based on the same assumption that the youngest dependents would not go to school beyond the age of 18, to $1,541,526, based on the assumption that the youngest dependents would attend school through the age of 25.

On the issue of the continued schooling of the youngest children, the fund's attorney cited evidence submitted in the settlement brochures, and argued that given the educational backgrounds and financial resources of the two families, it was likely that the youngest children would go to college and then attend graduate school, medical school, or law school until the age of 25. The attorney for the trustees countered that the children were currently only 8 and 13 years old, and that the issue of continued schooling at this time was speculative, particularly given the fact that both children had lost significant family members.

---

**6.** The experts for both parties reduced their respective valuations to present value, as required by *Wilken v. Int'l Harvester,* 363 N.W.2d 763, 767 (Minn.1985).

A district court bases its calculation of the value of future workers' compensation benefits on the evidence made available to it, including any affidavits, depositions, and exhibits, and any reasonable assumptions it might make based on that evidence. *See Tyroll,* 505 N.W.2d at 61. While it is difficult to calculate future benefits with reasonable certainty, the court must make approximations based on reasonable assumptions. *See Wilken v. Int'l Harvester Co.,* 363 N.W.2d 763, 767–68 (Minn.1985). The recovery of future benefits, however, should not be based on speculation. *See Schlichte,* 599 N.W.2d at 188.

Here, the district court rejected the fund's claim that it should assume that the two youngest children will continue in school beyond the age of 18, based solely on the educational backgrounds of their families. While one might assume that children whose parents have advanced degrees generally follow that lead and while common sense might allow a court to make such an assumption, the district court here found that the evidence offered by the fund was too speculative to allow it to make such an assumption. The fund could have submitted statistical evidence in affidavit form regarding the likelihood that children of parents with higher educational backgrounds will continue with schooling beyond the age of 18. Based on this record, we cannot conclude that the district court clearly erred in finding that the fund failed to establish that these children would likely continue with school beyond the age of 18.

### DECISION

Because the district court misapplied the statutory formula, its calculation of the fund's subrogation claim is reversed, and the issue is remanded for a calculation consistent with this opinion. The district court's decisions regarding reasonable costs and attorney fees and the amount of future workers' compensation benefits to be paid by the fund, based on the assumption that the youngest children will not continue with school beyond the age of 18, were within its discretion and not clearly erroneous; these issues are therefore affirmed.

**Affirmed in part, reversed in part, and remanded.**