COLORADO COMPENSATION
INSURANCE AUTHORITY,
Petitioner,

v.

James Thomas JORGENSEN and Doreen
Harriet Jorgensen, Respondents.

No. 98SC211.

Supreme Court of Colorado,
En Banc.

Jan. 18, 2000.

Kennedy & Christopher, P.C., John R. Mann Clanahan, Tanner, Downing & Knowlton, P.C. Charles M. Pratt, Denver, Colorado, Attorneys for Petitioner.

Dwyer, Huddleson & Ray, P.C., Stephen J. Jouard, Megan L. Hayes, Fort Collins, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

The issues before us arise in a lawsuit for personal injuries brought by James T. Jorgensen against three separate defendants who are no longer parties to this action. Because Jorgensen was receiving workers' compensation benefits from the Colorado Compensation Insurance Authority (CCIA) as a result of these injuries, CCIA intervened during the course of the litigation to protect its subrogation rights. After CCIA and Jorgensen reached a settlement with the tortfeasors, the trial court denied Jorgensen's motion to hold an evidentiary hearing to apportion the settlement proceeds between economic, non-economic and loss of consortium amounts. The trial court further held that CCIA has subrogation rights against the total net recovery. The court of appeals reversed, holding that the trial court has jurisdiction to apportion settlement proceeds and that CCIA's subrogation rights do not extend to the non-economic and loss of consortium recoveries. We granted certiorari in this action in tort to determine whether the court presiding over the personal injury claims has jurisdiction to apportion the settlement proceeds and to consider the extent of the subrogation rights of the compensation insurer.[1] We affirm the judgment of the court of appeals.

---

1. CCIA presented the following two issues for our review:

 1. Whether the court of appeals erred in reversing the trial court's order, and in creating a limitation on the § 8–41–203(1), 3 C.R.S. (1999), subrogation right to offset future benefits against third party litigation net settlement proceeds.

 2. Whether the court of appeals erred in creating a post-settlement district court evidentiary

## I.

While working on a construction project, Jorgensen fell through an opening on the roof of a junior high school. A piece of unsecured plywood covered the opening in the roof. There were no markers or warning signals alerting others that the opening was there. Jorgensen fell when he tried to lift the plywood covering the opening.

Jorgensen then filed a personal injury action against Poudre Valley Air, Allen Plumbing & Heating and URS Consultants. URS Consultants was subsequently dismissed as a party. Jorgensen claimed damages for injuries, pain and suffering, lost wages and medical expenses. His spouse filed a derivative claim against the defendants for loss of consortium.

As a result of the accident, Jorgensen received workers' compensation benefits in excess of $200,000 from CCIA. Consequently, CCIA intervened in the personal injury case in order to recover the benefits it had paid as well as future benefits for which it was liable.

Before a trial was held, Jorgensen and CCIA settled for nearly $3,000,000 with the two remaining defendants, Poudre Valley and Allen Plumbing & Heating. The settlement was for one lump sum without an allocation of specific amounts for each different claim. The parties did not agree to divide the settlement proceeds between economic, non-economic and loss of consortium amounts. Following the settlement, the trial court dismissed the claims against the defendants with prejudice pursuant to the parties' stipulation.

■ CCIA participated in the settlement negotiations and was a party to the final settlement. The parties stipulated that CCIA would receive $210,000 for benefits already paid to Jorgensen. The parties further agreed that CCIA would receive a reimbursement of lost wage benefits against the settlement, but failed to agree on future

hearing procedure to allocate the parties' settlement proceeds.

2. Although Mr. Jorgensen died of unrelated causes on March 31, 1999, we address the issues before us. Both parties stipulate that this matter is not moot because it is a matter of public importance, *see Humphrey v. Southwestern Dev.*

medical benefits payable under the Workers' Compensation Act.[2]

Jorgensen moved the trial court to hold an evidentiary hearing to allocate the settlement proceeds between economic and non-economic amounts. The trial court denied the motion and decided that CCIA has subrogation rights for its future obligations against the entire net settlement. Jorgensen and his spouse appealed.

The court of appeals reversed, holding that CCIA only had subrogation rights against the economic recovery and not against the non-economic and loss of consortium recoveries. *See Jorgensen v. Colorado Compensation Ins. Auth.*, 967 P.2d 172, 173 (Colo.App. 1998). The court of appeals further recognized that the trial court had jurisdiction to allocate the settlement proceeds between economic, non-economic and loss of consortium amounts. *See id.* at 174.

## II.

This case calls upon us to examine the extent to which an insurer is subrogated to a claimant's rights to recovery against a tortfeasor under the Workers' Compensation Act. As a preliminary matter, we discuss the jurisdiction of the trial court to allocate funds from a settlement in a personal injury case between loss of consortium, economic and non-economic amounts. We then address the limitations of an insurer's subrogation rights under the Workers' Compensation Act.

## A.

■ CCIA argues that by apportioning the settlement proceeds, the trial court would infringe on the exclusive jurisdiction of the Division of Labor to determine workers' compensation matters under section 8–43–201, 3 C.R.S. (1999). According to CCIA, the trial court's apportionment would amount to a *de*

*Co.*, 734 P.2d 637, 639 (Colo.1987), and a matter that is capable of repetition which may otherwise evade review. *See Feigin v. Colorado Nat. Bank*, 897 P.2d 814, 817 (Colo.1995). Also, the parties disagree whether there is a real issue remaining over medical expenses.

*facto* determination of the offset for future workers' compensation benefits. Consequently, CCIA contends that the trial court does not have jurisdiction to apportion the settlement proceeds between economic, non-economic and loss of consortium amounts. We disagree.

▆ As the court of appeals noted, the trial court had jurisdiction over the personal injury case. *See Jorgensen*, 967 P.2d at 174. In the trial of personal injury cases, juries determine the amount of damages to award for various injuries and claims. *See Bohrer v. DeHart*, 961 P.2d 472, 475, 479 (Colo.1998) (jury apportionment between future and past economic and non-economic damages); *Martinez v. St. Joseph Hosp. & Nursing Home of Del Norte, Inc.*, 878 P.2d 13, 15 (Colo.App. 1993) (jury apportionment of economic and non-economic proceeds in a tort case involving workers' compensation benefits). Of course, the trial court itself would determine the appropriate amounts for economic, non-economic and loss of consortium as the trier of fact if a jury were not requested.

▆ Trial courts also have jurisdiction to accept settlements and to give effect to them. *See Bruce W. Higley Defined Benefit Annuity Plan v. Kidder, Peabody & Co.*, 920 P.2d 884, 891 (Colo.App.1996) (recognizing that a trial court approval of a settlement will not be overturned absent a strong showing of clear abuse of discretion); *Mulei v. Jet Courier Serv., Inc.*, 860 P.2d 569, 571 (Colo.App. 1993) (holding that although the trial court had dismissed the cause with prejudice, it retained jurisdiction to give effect to the settlement order).

We see no reason why the jurisdiction of the trial court over the amount recovered for various injuries is altered because a settlement is reached that does not address the allocation. Nor is it appropriate for the trial court to decline to apportion settlement proceeds from a case over which it has jurisdiction simply because there is a claim against the settlement for payment of workers' compensation benefits.

CCIA contends that prior decisions of the court of appeals support its contention that a trial court does not have jurisdiction to ap-

portion settlement proceeds from a tortfeasor. Contrary to CCIA's argument, our examination of these decisions reveals that they are consistent with our conclusion that the court with jurisdiction over the tort claim also has jurisdiction to apportion the settlement proceeds.

CCIA argues that the court of appeals misapplied *Jordan v. Fonken & Stevens, P.C.*, 914 P.2d 394 (Colo.App.1995). The court of appeals cited *Jordan* in support of its holding that a trial court has jurisdiction to apportion settlement proceeds paid by a tortfeasor. *See Jorgensen*, 967 P.2d at 174. CCIA claims that *Jordan* supports the opposite conclusion. We disagree with CCIA and find no fault with the court of appeals' reading of *Jordan*.

In *Jordan*, the injured employee and the workers' compensation insurer settled a personal injury claim against the tortfeasor. *See* 914 P.2d at 394. After the settlement, the injured employee argued to an administrative law judge (ALJ), who presided over the workers' compensation claim, that the subrogation rights of the compensation insurer should be limited to economic damages. *See id.* at 395. The ALJ concluded that the subrogation rights of the compensation insurer reached the entire settlement. *See id.* A panel of the Industrial Claim Appeals Office upheld the decision of the ALJ refusing to apportion the proceeds of the tort action, and the court of appeals affirmed. *See id.* In recognizing that the Division of Labor has no jurisdiction to apportion the settlement proceeds from personal injury claims, the court offered that apportionment should "be determined either by agreement of all interested parties or *by the tribunal having jurisdiction over a claimant's tort claim.*" *Id.* (emphasis added). The *Jordan* opinion suggests that the court with jurisdiction over the personal injury action can apportion the settlement proceeds.

In this case, Jorgensen asked the court with jurisdiction over the personal injury action, not the Division of Labor, to apportion the settlement proceeds between loss of consortium, economic losses and non-economic losses.

■ In the brief filed with us, CCIA argues that, in this case, "the court of appeals held that the district court had jurisdiction to apportion the settlement between future medical benefits and non-economic losses." We do not agree with this interpretation of the holding of the court of appeals. CCIA correctly observes that the determination of the amount for future medical benefits is within the exclusive jurisdiction of the Division of Labor. The court of appeals agreed that the personal injury court could not determine the amount of the workers' compensation medical benefits, but instead held that the trial court does have jurisdiction to determine the amount of the settlement which represents non-economic losses. *See Jorgensen,* 967 P.2d at 174.

The holding of the court of appeals that the trial court has jurisdiction to apportion proceeds from a tort case finds further support in *Martinez v. St. Joseph Hospital & Nursing Home of Del Norte, Inc.,* 878 P.2d 13, 15–16 (Colo.App.1993). In *Martinez,* the court of appeals found that the injured employee and the workers' compensation insurer agreed to pursue their tort claims against the tortfeasor separately to a jury. *See id.* at 16. Following the instructions of the court, the jury apportioned the recovery by awarding economic damages to the compensation insurer and non-economic damages to the claimant. *See id.* at 15–16. The court of appeals refused to allow the insurer to reach the claimant's recovery for non-economic damages. *See id.* at 16.

■ If the trial court has no jurisdiction to apportion the proceeds, as CCIA contends, then the *Martinez* court allowed the parties to grant jurisdiction to the trial court by their agreement. However, the parties can never create jurisdiction where none exists. *See Lee v. Colorado Dep't of Health,* 718 P.2d 221, 225 (Colo.1986) (stating that "jurisdictional limits to a court's authority are fixed by law and cannot be waived by the action or inaction of the parties"); *Saunders v. Norton,* 98 Colo. 537, 540–41, 58 P.2d 482, 484 (1936) (claiming that "jurisdiction of courts is fixed by law and cannot be conferred by consent or action of the parties"). We view *Martinez* as recognizing that the trial court

has jurisdiction to apportion proceeds awarded against a tortfeasor.

CCIA also cites *United Fire & Casualty Co. v. Armantrout,* 904 P.2d 1375 (Colo.App. 1995), as supporting its argument that the trial court has no jurisdiction to apportion damages. We do not agree that *Armantrout* applies to the issue before us. In *Armantrout,* the plaintiff filed and subsequently settled a tort action, for two separate incidents, against the same tortfeasor. *See id.* at 1377. The court of appeals rejected the apportionment by the trial court of the settlement amount between the two separate claims. *See id.* The compensation insurer paid workers' compensation benefits for both claims and both claims were therefore subject to the insurer's subrogation rights. *See id.* at 1378–80.

On appeal, the claimant unsuccessfully argued that an apportionment between both claims was necessary because otherwise he would be left inadequately compensated for one of the claims. *See id.* at 1379. The court of appeals held that a trial court cannot apportion settlement proceeds between two separate claims simply because an exercise of an insurer's subrogation rights "would result in inadequate compensation for the injured worker." *Id.* The court correctly noted that the claimant's reliance on *Hewitt v. Apollo Group,* 490 N.W.2d 898 (Minn.Ct.App.1992), was misplaced. *See Armantrout,* 904 P.2d at 1379. Interpreting Minnesota law, the *Hewitt* court held that the insurer could not subrogate against the claimant's recovery because the claimant "has not recovered full compensation for her actual loss." 490 N.W.2d at 901. Unlike Minnesota, Colorado does not require that the claimant be fully compensated before subrogation rights may be exercised.

We do not construe *Armantrout* to support the proposition that trial courts have no jurisdiction to apportion settlement proceeds from a tortfeasor. Rather, we read *Armantrout* as holding that a trial court cannot apportion proceeds between two different claims against the same tortfeasor to protect the employee from inadequate compensation.

■ Generally, a trial court has jurisdiction to apportion settlement proceeds from a personal injury case filed with the trial court. The court of appeals has upheld the trial court's jurisdiction to apportion recoveries from cases involving workers' compensation benefits. We also conclude that the trial court's jurisdiction is not altered because the personal injury claims involve injuries for which the plaintiff is entitled to workers' compensation benefits.

### B.

■ The fact that the trial court has jurisdiction to apportion the proceeds from a settlement in a personal injury case does not resolve the question of whether the compensation insurer has subrogation rights that extend to the total net recovery. Therefore, we now turn to the question of the extent to which an insurer is subrogated to a claimant's rights to recovery against a tortfeasor under the Workers' Compensation Act. We review the statute and case law concerning the reach of an insurer's subrogation rights against non-economic and loss of consortium recoveries. We hold that, absent attempts to circumvent the legitimate subrogation rights of the insurer, the insurer is subrogated only to the claimant's rights to economic recovery on the personal injury claims.

■ The Workers' Compensation Act allows an employee to pursue personal injury claims against tortfeasors, while receiving workers' compensation benefits.[3] *See* § 8–41–203(1), 3 C.R.S. (1999). Under the statute, the insurer's subrogation rights include both past and future benefits for which the insurer is liable. *See Tate v. Industrial Claim Appeals Office*, 815 P.2d 15, 17 (Colo. 1991).

Initially, we turn our focus to the "excess clause" of the statute, which limits the monetary amount the insurer may recover through its subrogation rights. The statute provides:

[The] insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury.

§ 8–41–203(1). This language outlines the amount of the insurer's recovery, by providing that the insurer cannot recover any amount greater than the amount for which it is liable. It does not, however, define or explain the subrogation rights of the insurer. Rather, the language provides a quantitative limit to the insurer's recovery through its subrogation rights.

■ Subsequent language in this section defines the subrogation rights as follows:

The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee or the employee's dependents are entitled under the provisions of said articles ... or for which the employee's employer or insurance carrier is liable or has assumed liability.

*Id.* This language does not define the subrogation rights in terms of the rights that a claimant and her dependents have against the tortfeasor, as might be expected. Rather, the provision defines the subrogation rights of the insurer in terms of the workers' compensation benefits for which the insurer is liable. However, a claimant and her dependents have no right to recover workers' compensation benefits against the tortfeasor. Instead, they can recover from the tortfeasor on claims for lost wages, medical expenses and other economic damages. These economic damages compensate the claimant or her dependents for injuries and expenses for *which they are also entitled to receive work-ers' compensation benefits.*

We must determine which of two conflicting interpretations best conforms to the lan-

---

3. As this court noted, an injured employee usually combines the remedies given under the statute. "[T]he employee receives interim workers' compensation benefits, recovers from the tortfeasor, reimburses the insurer for the interim benefits, credits the insurer for potential future benefits, and keeps the remainder as excess damages." *Tate v. Industrial Claim Appeals Office*, 815 P.2d 15, 17 (Colo.1991).

guage of the statute defining subrogation rights. Under one interpretation, the insurer is subrogated to every right that a claimant and her dependents have against the tortfeasor until it recovers the entire amount of workers' compensation benefits for which it is liable. Under the other interpretation, the insurer is subrogated only to the claimant's rights to recover economic damages against the tortfeasor because those are the damages that compensate the claimant for injuries and expenses for which she is entitled to receive workers' compensation benefits.

CCIA urges us to adopt the first interpretation that this defining provision extends the insurer's subrogation rights to the entire net recovery proceeds, including loss of consortium, economic and non-economic amounts. That is, the insurer's subrogation rights are absolute, covering the entire net recovery, regardless of the right on which the recovery is based.

We find the interpretation advanced by CCIA inconsistent with certain principles of statutory construction, as well as with previous interpretations of this section by this court and by the court of appeals. After applying the principles of statutory construction and discussing the previous interpretations, we conclude that this language provides that the insurer is only subrogated to the claimant's rights to recover economic damages.

When interpreting a statute, a court must determine and effect the legislative intent. *Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246, 1252 (Colo.1998). When the statutory language is ambiguous and lends itself to alternative interpretations, a court may explore various sources of legislative intent, including the consequences of a particular construction. *See* § 2–4–203(e), 1 C.R.S. (1999); *State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 504 (Colo.1993). Additionally, interpretations that render statutory provisions redundant and superfluous should be avoided. *See People v. San Emerterio,* 839 P.2d 1161, 1165 (Colo.1992). That is, we must interpret a statute to give effect to all its parts. *See Gonzales v. Ad-*

*vanced Component Sys.,* 949 P.2d 569, 574 (Colo.1997).

Under CCIA's interpretation, the defining provision simply states that the insurer may recover, pursuant to its subrogation rights, the amount for which it is liable. As noted above, the "excess clause" of section 8–41–203(1) already delineates the amount that the insurer may recover, although it does so in terms of the maximum amount that the insurer may recover. The "excess clause" provides that the insurer's recovery is limited to its liability. Under CCIA's interpretation, the defining provision would serve the same purpose as the "excess clause," allowing the insurer to recover the amount for which it is liable. Thus, CCIA's interpretation transforms the provision defining the subrogation rights into another "excess clause," thereby rendering it redundant and superfluous.

Our interpretation, however, does not render the defining provision superfluous. Our construction of the defining provision as limiting the insurer's subrogation rights gives the language meaning beyond merely restating a limitation to the amount that the insurer may recover under its subrogation rights. The defining provision identifies the specific rights of the claimant to which the insurer is subrogated. That is, the right of subrogation applies to the claimant's rights to recover against the tortfeasor for the same injuries for which she is entitled to worker's compensation benefits. By identifying the specific rights, the defining provision no longer repeats the "excess clause." As such, our interpretation gives effect to the language of the defining provision, instead of rendering it redundant and superfluous.

Previous decisions from this court and the court of appeals support our interpretation of the subrogation provisions of section 8–41–203(1). These cases have established that an insurer's subrogation rights are not absolute and do not extend to every right that the claimant or her dependents have against the tortfeasor. These cases have recognized that section 8–41–203(1) does not subrogate the insurer to any right beyond the claimant's rights to economic recovery.

In *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15, 16 (Colo.1991), we held that

a workers' compensation insurer did not have subrogation rights against certain settlement proceeds from a tortfeasor. The injured employee filed a tort action for injuries from an automobile accident and eventually settled with the tortfeasor. *See id.* The injured employee also had a valid claim for both workers' compensation benefits and no-fault auto insurance personal injury protection (PIP) benefits. *See id.* at 20. Pursuant to the primacy rule of the Colorado Auto Accident Reparations Act (the No–Fault Act), the workers' compensation insurer was required to pay benefits, in lieu of the PIP benefits which would otherwise have been paid by the auto insurer.[4] *See id.* at 19. Also, the No–Fault Act prevented the employee from recovering damages from the tortfeasor, including lost wages, for injuries for which he was entitled to receive PIP benefits. *See id.* at 18–19.

Under this statutory scheme, we did not allow the workers' compensation insurer subrogation rights against the settlement for the amount it paid for lost wages. We found that doing so would undermine the No–Fault Act's statutory scheme for PIP benefits. *See id.* at 21. In addition, we reasoned that the settlement with the tortfeasor did not include lost wages, which could not be recovered in tort pursuant to the No–Fault Act. *See id.* at 22.

▆▆ Hence, in *Tate*, we recognized limits to an insurer's subrogation rights under section 8–41–203(1). We looked to the nature of the claim for recovery against the tortfeasor to understand the limitations. *See* 815 P.2d at 22. We recognized that an insurer's subrogation rights do not reach a settlement that could not have included amounts for which the insurer was liable.

Consistent with our interpretation of section 8–41–203(1), the court of appeals has also interpreted the subrogation provisions of the statute as limiting the insurer's subrogation rights to the claimant's right to recover economic damages from the tortfeasor. Specifically, the court of appeals has held that the insurer is not subrogated to the spouse's right to recover for loss of consortium, nor to the claimant's right to recover non-economic damages under section 8–41–203(1).[5] *See Rains v. Kolberg Mfg. Corp.,* 897 P.2d 845, 848 (Colo.App.1994) (loss of consortium); *Martinez v. St. Joseph Hosp. & Nursing Home of Del Norte, Inc.,* 878 P.2d 13, 15 (Colo.App.1993) (non-economic damages). We continue our analysis by considering the claim for loss of consortium and the discussion in *Rains.*

▆▆ Loss of consortium is a derivative claim. *See Lee v. Colorado Dep't of Health,* 718 P.2d 221, 230 (Colo.1986). Derivative claims are unique in that they depend entirely upon the right of the injured person to recover. *See Elgin v. Bartlett,* 994 P.2d 411, 415 (Colo.1999).[6]

▆▆ The fact that CCIA never paid the spouse any benefits for loss of consortium is

---

**4.** The PIP benefits under the No–Fault Act include medical expenses, occupational rehabilitation, lost wages and death. *See* § 10–4–706(1)(b)-(e), 3 C.R.S. (1999).

**5.** If the insurer is subrogated to all rights of recovery, as CCIA interprets the section, then the insurer would be subrogated to the spouse's right to recover loss of consortium damages because section 8–41–203(1), applies to the employee's dependents. In fact, the logical extension of CCIA's interpretation of the statute would lead to the otherwise unsupportable conclusion that CCIA could recover its liability through an unrelated claim that the claimant has against the tortfeasor.

**6.** The effect of being a derivative claim is that loss of consortium claims are subject to the same defenses available to the underlying personal injury claim. *See Lee v. Colorado Dep't of Health,* 718 P.2d 221, 230 (Colo.1986). For example, the comparative or contributory negligence of the injured party operates to preclude or to reduce recovery for derivative claims. *See id.* at 230 (comparative negligence); *Schaffner v. Smith,* 158 Colo. 387, 393, 407 P.2d 23, 26 (1965) (contributory negligence).

Though subject to the same defenses as the principal claim, derivative claims generally "are separate from the claims of the injured person." *Elgin v. Bartlett,* 994 P.2d 411, 415 (Colo.1999); *see also Lee,* 718 P.2d at 230. As a separate claim, loss of consortium is a distinct cause of action, giving rise to a separate and individual right to recover damages. *See Harms v. Williamson,* 956 P.2d 649, 653 (Colo.App.1998); *Rains v. Kolberg Mfg. Corp.,* 897 P.2d 845, 847 (Colo.App. 1994).

critical to our decision that CCIA cannot exercise its subrogation rights against the spouse's loss of consortium recovery. Because the spouse never received benefits for such injuries from CCIA, allowing the subrogation rights to reach loss of consortium recovery would be unfair to the spouse and would constitute a windfall for CCIA.

CCIA never paid benefits to the spouse because it was not liable under the Workers' Compensation Act for loss of consortium damages. *See* § 8–41–203(1). In *Rains,* the court of appeals held that the subrogation rights of the insurer did not reach the recovery of a spouse for loss of consortium. *See* 897 P.2d at 848. The court noted that "[t]here is no provision in the workers' compensation statutes ... for the payment of benefits to a person for loss of the society, companionship, and services of his or her spouse." *Id.* at 847. Because the benefits provided for by the Workers' Compensation Act do not include payments for loss of consortium, the insurer is not subrogated to the right to recover loss of consortium damages. *See id.* at 848.

In *Martinez,* the court of appeals again interpreted the subrogation provisions of section 8–41–203(1) as limiting an insurer's subrogation rights, holding that the insurer's subrogation rights do not reach a claimant's non-economic recovery. *See* 878 P.2d at 14. Martinez filed a tort action against the tortfeasor. *See id.* After the jury awarded non-economic damages to the plaintiff and economic damages to the insurer, the insurer argued that it could exercise its subrogation rights against any recovery by the plaintiff. *See id.* The court of appeals held that an insurer could not exercise its subrogation rights against the injured employee's recovery for non-economic damages. *See id.* at 15–16. There, the court expressly rejected the argument that section 8–41–203(1) "entitles [the insurer] to reimbursement from any recovery by plaintiff, regardless of the basis of that recovery." *Id.* at 14. Instead, the court noted that "section 8–41–203(1) expressly limits the insurer's right to recovery to damages obtainable through subrogation." *Id.* at 15.

Both *Rains* and *Martinez* are consistent with our construction of the statute's provisions defining the insurer's subrogation rights. Moreover, both decisions correctly identify the limitations of an insurer's subrogation rights in a personal injury case and reach the conclusion that the insurer is not subrogated to the claimant's rights that extend beyond claims for economic recovery.

The only decisions allowing an insurer to exercise its subrogation rights without apportioning the recovery involve attempts to circumvent the insurer's subrogation rights. In these cases, the court of appeals allowed the insurer to exercise its subrogation rights against the claimant's recovery without an apportionment. *See Rocky Mountain Gen. v. Simon,* 827 P.2d 629, 631 (Colo.App.1992) (rejecting claimant's unilateral placement of settlement proceeds in a discretionary trust); *Kennedy v. Industrial Comm'n,* 735 P.2d 891, 893 (Colo.App.1986) (rejecting claimant's unilateral designation of the proceeds from a tort settlement as pain and suffering). However, absent any attempt by the claimant or her dependents to circumvent the insurer's subrogation rights, section 8–41–203(1) limits those subrogation rights to economic recovery.

After reviewing the statute and case law, we hold that section 8–41–203(1) defines the subrogation rights of the compensation insurer as extending to the injured employee's rights to recover economic damages against the tortfeasor, and does not include every right to recovery that the injured employee and her dependents have against the tortfeasor. Specifically, the subrogation rights only reach the claimant's rights to recover "all compensation and all medical, hospital, dental [and] funeral" expenses as well as "*other benefits and expenses ... for which the ... insurance carrier is liable or has assumed liability.*" *Id.* (emphasis added).

### C.

Additionally, we observe that our construction of the subrogation provisions is consistent with the policy goals of the statute.

An important policy of the statute is to avoid double recoveries by claimants. *See*

*Tate v. Industrial Claim Appeals Office,* 815 P.2d 15, 22 (Colo.1991); *Simon,* 827 P.2d at 632. CCIA argues that Jorgensen would receive a double recovery if it could not exercise its subrogation rights against his entire net recovery. We find this argument unpersuasive.

Under our interpretation of the section, the claimant receives no double recovery. The double recovery occurs when the claimant receives workers' compensation benefits, such as medical costs and lost wages, and recovers those same benefits from the tortfeasor without reimbursing the insurer. No double recovery occurs when the claimant receives workers' compensation benefits from the insurer and non-economic benefits from the tortfeasor because the claimant only receives the damages that he would be entitled to if he had only pursued the personal injury claims: non-economic and economic damages.

 We are concerned that our holding today can be applied to frustrate the policy of encouraging claimants to recover as much as possible from the tortfeasor. Therefore, we adopt the safeguards initially delineated by the court of appeals in *Rains v. Kolberg Manufacturing Corp.,* 897 P.2d 845, 848 (Colo.App.1994). We hold that the employee may not attempt to circumvent the legitimate subrogation rights of the insurer without risking that any apportionment will be set aside and the compensation insurer will be entitled to subrogate against the total net proceeds. When a settlement involves an insurer's subrogation rights, the insurer may ask the court to scrutinize the settlement to make sure that there was no attempt to circumvent the insurer's subrogation rights. In such instances, the court may determine whether the settlement was fair and reasonable with regard to the amounts designated as loss of consortium and non-economic. *See Rains,* 897 P.2d at 848. If the court finds that the parties entered the settlement to circumvent the subrogation rights of the insurer, then those rights may reach any portion used to defeat the subrogation rights. *See id.*

Though not at issue here, we are cognizant of the fact that claimants could try to circumvent the subrogation rights of the insurer in cases that are litigated without reaching a settlement. A claimant could fail to pursue the economic claims ardently, or not pursue these claims at all. Although courts cannot control a plaintiff's strategy in pursuing personal injury claims, they do have jurisdiction over trial verdicts. *See Burns v. McGraw–Hill Broad. Co.,* 659 P.2d 1351, 1356 (Colo. 1983) (court may scrutinize verdict and grant new trial if verdict is result of bias, prejudice or passion); *Lehrer v. Lorenzen,* 124 Colo. 17, 20, 233 P.2d 382, 384 (1951) (recognizing that a trial court can set aside verdict). Upon request, a personal injury court may scrutinize a verdict and reapportion it if the plaintiff circumvented the insurer's subrogation rights through her uncommitted pursuit of the economic claims. We believe that such scrutiny will adequately protect subrogation rights against an unscrupulous attempt to circumvent those rights.

Finally, when apportioning the settlement in this case, the court may hold a hearing to determine the different amounts for loss of consortium, economic and non-economic damages. The court shall look to the totality of the circumstances, keeping in mind tort and loss of consortium principles. The parties may offer testimony and may cite portions of the record of the worker's compensation action for consideration by the trial court in determining the allocation between loss of consortium, economic and non-economic amounts in the personal injury case. *See Bohrer v. Church Mut. Ins. Co.,* 965 P.2d 1258, 1267 (Colo.1998).

### III.

In conclusion, we hold that the court with jurisdiction in a personal injury action may apportion settlement proceeds among economic, non-economic and loss of consortium amounts. We also hold that a compensation insurer has no subrogation rights against a spouse's recovery for loss of consortium in such cases. Finally, we hold that an insurer's subrogation rights do not reach the non-economic portions of a claimant's recovery under section 8–41–203(1). Accordingly, we affirm the judgment of the court of appeals

and return this case to the court of appeals for remand to the trial court.