**RELIANCE INSURANCE COMPANY
and Alamon Telco, Inc., Intervenors–
Appellants,**

v.

**Leslie M. BLACKFORD,
Plaintiff–Appellee.**

No. 03CA0774.

Colorado Court of Appeals,
Div. III.

Sept. 9, 2004.

McElroy, Deutsch & Mulvaney, LLP, Thomas L. Kanan, Denver, Colorado, for Intervenors–Appellants.

Hoover Law Firm, David S. Hoover, Brian M. Weiss, Lakewood, Colorado, for Plaintiff–Appellee.

Opinion by Judge KAPELKE.

Intervenors, Reliance Insurance Company and Alamon Telco, Inc., appeal the trial court's order rejecting their subrogation claim and determining that plaintiff, Leslie M. Blackford (claimant), was entitled to one hundred percent of the proceeds he received in settlement of a personal injury action. Intervenors also challenge the cost award for claimant. We reverse the order, vacate the cost award, and remand for further proceedings.

In August 2000, claimant was injured in a car accident while acting in the course and scope of his employment. Claimant was employed by Alamon Telco, which was insured under a workers' compensation policy issued by Reliance. Since the accident, claimant has received workers' compensation benefits from intervenors.

In January 2001, claimant brought a personal injury action against the driver of the other car involved in the accident, seeking damages for his "past, present and future injuries, damages and losses." In January 2002, intervenors were permitted to intervene in the action to assert subrogation rights under § 8–41–203, C.R.S.2003, to the extent of the workers' compensation benefits they had provided claimant.

In June 2002, claimant, intervenors, and the defendant agreed to settle the personal injury action for $100,000, the coverage limit under the defendant's insurance policy. The parties did not agree on an allocation of the settlement proceeds. Claimant moved for an evidentiary hearing in accordance with *Colorado Compensation Insurance Authority v. Jorgensen*, 992 P.2d 1156 (Colo.2000), to determine the portion, if any, of the proceeds Reliance would be entitled to receive.

At the hearing, intervenors asserted a statutory subrogation claim to $73,654.19, representing the total amount of the workers' compensation benefits paid, less an amount equal to the maximum personal injury protection (PIP) benefits, for which Reliance was admittedly not entitled to reimbursement.

Following the hearing, the trial court found that claimant's economic damages were between $600,000 and $700,000 and that his non-economic damages exceeded $100,000. Based upon its evaluation of several factors, including claimant's contingency fee arrangement with his attorney, claimant's expenses, and the deficiency of the settlement amount in relation to claimant's total damages, the court held that claimant was entitled to retain the entire amount of the settlement. The court also awarded claimant costs of $1,895.70.

## I.

■ Intervenors contend that the trial court erred in failing to apportion the settlement proceeds between economic and non-economic damages and in failing to recognize Reliance's subrogation rights. We agree.

Pursuant to § 8–41–203(1)(b), C.R.S.2003, of the Workers' Compensation Act (the Act), the payment of workers' compensation benefits to an injured employee operates as an assignment to the workers' compensation carrier of the employee's cause of action against the third-party tortfeasor responsible for the employee's injuries. However, the carrier is not entitled to "recover any sum in excess of the amount of compensation for which said carrier is liable under [the Act] to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury." Section 8–41–203(1)(b).

■ Where a settlement is reached with the third-party tortfeasor, the insurer's subrogation interest extends to the settlement proceeds. *Rains v. Kolberg Mfg. Corp.*, 897 P.2d 845, 847 (Colo.App.1994).

**580**

The benefits provided to an injured employee pursuant to the Act include medical expenses, vocational rehabilitation, and disability payments as compensation for lost wages. *Tate v. Indus. Claim Appeals Office,* 815 P.2d 15, 16–17 (Colo.1991). The Act does not provide for compensation for non-economic damages, such as pain and suffering. *Martinez v. St. Joseph Hosp. & Nursing Home of Del Norte, Inc.,* 878 P.2d 13, 15 (Colo.App.1993).

The carrier's subrogation rights attach only to the claimant's rights to recover "all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee ... [is] entitled under the [Act] ... or for which the employee's employer or insurance carrier is liable or has assumed liability." Section 8–41–203(1)(c), C.R.S.2003. Thus, the carrier's subrogation interest is limited to the claimant's right to recover economic, as opposed to non-economic, damages. *Colo. Comp. Ins. Auth. v. Jorgensen, supra,* 992 P.2d at 1163; *Am. Guar. & Liab. Ins. Co. v. King,* 97 P.3d 161, 2003 WL 22413835 (Colo.App. No. 02CA0927, Oct. 23, 2003); *see also Martinez v. St. Joseph Hosp. & Nursing Home of Del Norte, Inc., supra,* 878 P.2d at 14 (concluding that workers' compensation carrier could not reach portion of damages allocated by jury as non-economic damages even though the insurer was not fully compensated for its economic damages as a result of a reduction based on the claimant's comparative negligence).

Where the parties to a settlement agreement do not allocate the settlement proceeds and, instead, request the trial court to do so, the court may hold an evidentiary hearing to "determine the different amounts for ... economic and non-economic damages." *Colo. Comp. Ins. Auth. v. Jorgensen, supra,* 992 P.2d at 1166. In determining the respective amounts of economic and non-economic damages, the court should consider the totality of the circumstances. *Colo. Comp. Ins. Auth. v. Jorgensen, supra,* 992 P.2d at 1166.

Here, the parties themselves did not allocate the settlement proceeds. As the trial court noted, "[the tortfeasor] was not overly concerned as to what went to pain and suffering and what went to a loss of income or ... what went to economic loss [and] non-economic loss."

In its ruling on allocation of the $100,000, the court stated:

The Court obviously finds the amount of economic loss to be very substantial ... between six and $700,000. The non-economic loss, the Court finds would be in *excess* of $100,000.... [W]hen the Court considers all of those factors, the Court is going to order that [claimant] is to retain the entire settlement in this case.

(Emphasis added.)

Although the trial court made general factual findings regarding the extent of economic and non-economic damages suffered by claimant, it did not apportion the settlement proceeds in accordance with those findings. Instead, it appears that the court based its determination on equitable considerations, finding that because claimant's non-economic damages exceeded $100,000, he should receive the entire amount.

Even if a claimant is entitled to non-economic damages, however, Colorado law "does not require that the claimant be fully compensated before subrogation rights may be exercised." *Colo. Comp. Ins. Auth. v. Jorgensen, supra,* 992 P.2d at 1161.

While a number of factors may be considered in attributing the settlement proceeds to the economic and non-economic damage categories respectively, once the allocation has been determined, the distribution of settlement proceeds should be based on that allocation.

We reject intervenors' contention, however, that Reliance was entitled to at least eighty-five percent of the settlement proceeds based on the trial court's findings that claimant's economic damages were between $600,000 and $700,000 and that his non-economic loss "would be in excess of $100,000."

The trial court did not make an explicit finding regarding the total amount of damages suffered by claimant or the actual specific amount of the non-economic damages.

Nor did it order that the settlement proceeds be distributed based on such an allocation. Therefore, we must remand for further proceedings.

Upon remand, the trial court shall determine the actual amounts of claimant's economic and non-economic damages and apportion the settlement proceeds accordingly.

## II.

Intervenors also contend that the trial court erred in awarding claimant his costs incurred in connection with the *Jorgensen* hearing. In light of our holding reversing the trial court's allocation order, we agree. We therefore vacate the order awarding costs.

The order allocating settlement proceeds is reversed, the cost award is vacated, and the case is remanded to the trial court for apportionment of the settlement proceeds in accordance with this opinion.

Judge ROY and Judge CARPARELLI concur.